**Exhibit A**

**STIPULATED PROTOCOL FOR THE USE OF TECHNOLOGY ASSISTED REVIEW ("TAR") TO CULL AND SEARCH ESI**

1. **ESI Protocol in Conjunction with TAR Protocol.** Pursuant to the authorization of the ESI Protocol entered in this matter, Doc. 126 ("ESI Protocol"), the parties may utilize the following technologies and processes prior to applying TAR for culling purposes:

    a. De-NISTing (ESI Protocol, § IV.A)
    b. Email Threading (ESI Protocol, § IV.D.1)
    c. Exclusion of "Junk" Email Domains (ESI Protocol, § IV.D.2)
    d. De-Duplication (ESI Protocol, § IV.E)
    e. Filtering of Zero-Byte Files (ESI Protocol, § IV.F)

2. **Custodians.** The Custodian provision of the ESI Protocol applies to the use of TAR. (ESI Protocol, § V.B)

3. **Other Culling Parameters:** A producing party is permitted to further cull data using agreed-upon date parameters and/or agreed-upon search terms prior to applying TAR. To the extent a producing Party elects to use additional culling parameters, those parameters will be disclosed. If the parties are unable to reach agreement on any one of these "Other Culling Parameters," either party may seek Court intervention.

**SEARCH METHODS**

The following technology assisted review "TAR" processes shall govern how collected data may be electronically culled and searched in this matter. The Parties agree to work together cooperatively and in good faith to resolve any differences that they may have over the producing Party's use of TAR. To the extent that disputes remain that the Parties cannot resolve, the Parties agree to submit the dispute to the Court for resolution.

**A. TAR Search Process:**

  **1. Producing Party TAR Disclosures:**

  Before beginning the use of a TAR application, a producing Party that elects to use TAR will disclose the following information regarding its use of a TAR process: (a) the name of the TAR software and vendor, (b) a general description of how the producing Party's TAR process will work, including how it will train the algorithm, such as using exemplars, keyword search strings, or some other method, (c) a general description of the categories or sources of the documents included or excluded from the TAR process, and (d) what quality control measures will be taken.

  **2. Requesting Party Response:**

  The requesting Party may raise with the producing Party any concerns with the proposed TAR process or categories of documents that it proposes should be excluded from the TAR process. A requesting Party may also propose exemplar documents or search term(s) it proposes should be used to train a TAR process. However, a producing Party retains the right to reject and oppose any such requests, subject to resolution by the Court.

**CONFIDENTIALITY DESIGNATIONS**

In recognition that a TAR review: i) does not anticipate that all documents identified for production will be subject to human review; and ii) assumes that a substantial portion of documents will be produced without human review in reliance on a TAR algorithm's determination that such documents are responsive to a Requesting Party's requests for production; the Parties hereby agree that notwithstanding the definitions and provisions regarding documents designated as Confidential or Highly Confidential set forth in the Agreed Confidentiality Order entered by the Court on August 20, 2019, all internal documents (*i.e.,* documents not sent to any outside third-party)[1] produced pursuant to a TAR review process may be designated preliminarily as "Confidential — Subject to Protective Order." The parties further agree that the Producing Party also may, after consultation with and the consent of the requesting Party, determine that all documents from a limited number of specific custodians whose business activities are particularly sensitive shall be preliminarily designated as "Confidential-Subject to Protective Order." After the Producing Party has completed its production of documents, the Producing Party agrees to work cooperatively and in good faith with the requesting Party to determine if the "Confidential – Subject to Protective Order" designations may be removed in whole or in part for those documents that the requesting Party reasonably believes that it will utilize for purposes of depositions or motions practice. The Parties also agree to meet and confer regarding removing or changing any confidentiality designations in sufficient time prior to trial such that accurate trial exhibit lists may be prepared and submitted to the Court.

Nothing herein shall prohibit the Producing Party from designating prior to production any individual document(s) as "Highly Confidential – Outside Counsel Eyes Only" or from seeking, post-production, to amend a designation of "Confidential-Subject to Protective Order" to "Highly Confidential – Outside Counsel Eyes Only."

**VALIDATION PROTOCOL**

In recognition that: (i) the parties in this matter also agreed to a TAR Validation Protocol in *Sitzer v. NAR, et al.*, No. 19-cv-00332, (W.D. Mo.) ("*Sitzer*"); (ii) the documents produced in *Sitzer* also have been produced to plaintiffs' counsel in this matter; (iii) plaintiffs here will receive the results of the *Sitzer* Validation Protocol and have an opportunity to review and confer about those results, the parties agree that the Validation Protocol here will be as follows.

Once a producing Party reasonably believes that it has produced or identified for production substantially all responsive non-privileged documents, it shall conduct validation procedures consistent with the sampling protocol described below and in Appendix A. This Validation Protocol shall apply to documents subjected to a TAR process pursuant to this Order.

The Document Collection ("Collection") is defined as including all documents identified for TAR for responsiveness and/or privilege following the application of culling procedures

---

[1] For these presumptive confidentiality purposes only, an "internal document" shall include documents or communications internal to a named Defendant or group of affiliated named Defendants (*i.e.*, the Defendant group comprising HomeServices of America, Inc., HSF Affiliates, LLC, BHH Affiliates, LLC, and/or the Long & Foster Companies Inc.), including any documents or communications that such Defendant (or Defendant group) has shared internally with their respective parent company(ies), unless such documents or communications have been shared with an outside third party or affiliate that is not a parent company to the individual Defendant (or Defendant group).

2

authorized by the ESI Protocol or "Other Culling Parameters." This Validation Protocol assumes that the completeness or adequacy of the Collection has already been established. For purposes of the putative plaintiff class(es), the Collection refers to the combined set of documents of a particular proposed class(es) of plaintiffs, rather than to each individual named representative of a particular class of plaintiffs.

A. From the Collection, the producing Party shall identify documents deemed non-responsive based on a TAR process, without human intervention, and draw from that sample 1,000 documents.

C. Should a producing Party believe that the sample size of 1,000 documents would be disproportionate or unduly burdensome under the circumstances, that Party shall promptly raise the issue with the requesting Party. To the extent a dispute remains concerning the sample sizes to be used after good faith negotiations have occurred, either Party may request the assistance of the Court in resolving such dispute.

D. The sample of 1,000 documents shall be reviewed and coded by a subject matter expert(s) ("SME") who is knowledgeable about the subject matter of the litigation. This should be an attorney(s) who is familiar with the RFPs and the issues in the case. The producing Party is not precluded from selecting as SMEs attorneys who may have had prior involvement in the original review process. The SMEs shall review the collection of 1,000 documents and designate each as "responsive" or "non-responsive" to the discovery requests propounded by the requesting Party in this matter.

E. Once the coding in Paragraph D has been completed, the producing Party shall prepare a table listing each of the 1,000 documents in the Validation Sample. For each document, the table shall include:

1. The Bates number of the document (for documents produced), or a control/identification number (for non-produced documents);

2. The SME's responsiveness coding for the document (*i.e.*, responsive or non-responsive);

3. The SME's privilege coding for the document (*i.e.*, privileged or not privileged). If the document is coded as non-responsive, a privilege determination need not be made.

F. The following items shall be provided to the requesting Party no later than May 18, 2021[2]:

1. The table described in Paragraph E;

2. A copy of each responsive, non-privileged document in the Validation Sample that was not previously produced or identified for production to the requesting Party; and

3. The statistics and recall estimate detailed in Appendix A to this Order.

G. The requesting Party shall complete its review of the Paragraph F materials within seven days of receipt. Once the requesting Party has completed its review the items described in Paragraph F and Appendix A, the Parties shall promptly meet and confer to determine whether or not the

---

[2] If the present deadline of June 15, 2021, for the completion of document discovery responsive to parties' request for production is later amended, the parties agree that the TAR validation deadline would be adjusted accordingly to fall four weeks prior to the new deadline.

3

4830-8969-4168.1

Parties agree that the recall estimate, and the quantity and nature of the responsive documents identified through the sampling process, indicate that the review is substantially complete. If the recall estimate and the samples indicate that the 1,000-document sample contains a substantial number of non-marginal, non-duplicative responsive documents, the review and quality assurance process shall continue, and the validation process shall be repeated, as warranted. If and only if the requesting party makes a showing of good cause that receipt of such materials is necessary to its review, the requesting party may request a randomly selected sample of 100 non-privileged, non-responsive documents and the parties shall meet and confer to discuss whether production of that sample is warranted. If the parties are unable to agree on whether production of the non-responsive sample is warranted, the review is substantially complete, or whether the validation process must be repeated, the Parties may seek resolution from the Court.

# APPENDIX A

## Method of Recall Estimation

An estimate of recall shall be computed to inform the decision-making process described in Paragraph F of the Validation Protocol; however, the absolute number in its own right shall not be dispositive of whether or not a review is substantially complete. Also of concern is the novelty and materiality (or conversely, the duplicative or marginal nature) of any responsive documents identified in the sample. The estimate of recall shall be derived as described below. It should be noted that, when conducted by an SME pursuant to Paragraph D of the Validation Protocol, a recall estimate on the order of approximately 80% is consistent with, but not the sole indicator of, an adequate (*i.e.,* high-quality) review. A recall estimate somewhat lower than this does not necessarily indicate that a review is inadequate, nor does a recall in this range or higher necessarily indicate that a review is adequate; the final determination also will depend on the quantity and nature of the documents that were missed by the review process.

**Recall Estimation Method for a Review Process Involving TAR:**

Documents deemed non-responsive based on a TAR process without human intervention -- Collection 1 containing 1,000 documents

Documents in Collection 1 deemed responsive by human SME review – Collection 2

An Elusion Score determined by the following formula – Collection 2 ÷ (Collection 1 + Collection 2)

5